# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ART FINANCE FUNDING, (VIII), LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N24C-11-028 SPL |
| | ) | |
| INVESTART MANAGEMENT, LLC and GERALD P. PETERS, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: February 19, 2026
Decided: May 29, 2026

## MEMORANDUM OPINION

*Upon Defendant's Motion to Compel,*
**DENIED.**

*Upon Defendant's Renewed Motion to Stay,*
**DENIED.**

*Upon Defendant's Motion for Leave*
*to File an Amended Answer and Counterclaims*
**DENIED.**

*Upon Plaintiff's Renewed Motion for Summary Judgment*
**GRANTED.**

Michael L. Vild, Esq., CROSS & SIMON, LLC, Wilmington, Delaware, *Attorney for the Plaintiff*.

Zhao Liu, Esq., THE ROSNER LAW GROUP LLC, Wilmington, Delaware, Daniel A. Schnapp, Esq., DENTONS US LLP, New York, New York, *Attorney's for Defendant*.

**LUGG, J.**

**BACKGROUND**

On May 28, 2020, Plaintiff, Art Finance Funding (VIII), LLC ("Art Finance"), loaned $3,000,000.00 to Defendant, Investart Management, LLC ("Investart"). The loan is evidenced by a "Loan and Security Agreement" ("Loan") and a "Secured Grid Promissory Note" ("Note") executed the same day.[1] On August 27, 2020, the parties executed an "Amendment to Secured Grid Promissory Note" increasing the loan to $3,500,000.00.[2] Gerald Peters executed the agreements as representative of Investart and served as a guarantor of the loan.[3] As guarantor, Peters assumed responsibility for "the prompt payment" in the event Investart defaulted on the loan.[4] In July 2024, the parties executed a "Second Amendment to Secured Grid Promissory Note" which designated the Delaware Superior Court as the proper forum to hear any issues arising from the Note and maintained the $3,500,000.00 loan.[5]

Under the Loan, non-payment of interest within ten days of the date the payment is due or nonpayment of the principal balance on the due date constituted a

---

[1] D.I. 1, Ex. A ("Loan"), Ex. B ("Note").

[2] D.I. 1, Ex. C ("Amend. Note").

[3] D.I. 1, Ex. E ("Guarantee").

[4] Guarantee.

[5] D.I. 1, Ex. D ("Second Amend. Note").

1

default.[6]  In the event of default, Art Finance maintained the right to "declare the unpaid portion of the indebtedness to be immediately due and payable, without further notice or demand."[7]  And Art Finance, in its sole discretion, may offset or apply any Investart property in its possession to the debt.[8]  Investart waived its right to a jury trial to resolve any disputes under the loan[9] and, after a series of amendments, agreed that any dispute shall be governed by the laws of the State of Delaware and presented to the Delaware Superior Court.[10]

Under the terms of the Note, "[u]pon the occurrence of any one or more of the Events of Default specified in the Loan Agreement, all amounts then remaining unpaid on the Promissory Note may be declared to be or may automatically become immediately due and payable as provided in the Loan Agreement."[11]  Furthermore, "[t]he Borrower [and each of them] expressly waive[s] any and every right to impose any counterclaim, setoff or defense in any action or proceeding brought hereunder, except for the defense of payment."[12]  And, like the Loan, under the Note Investart

---

[6] Loan § 7(a)(i).

[7] Loan § 7(b)(i).

[8] Loan § 7(b)(ii).

[9] Loan § 7(e).

[10] Loan § 8(m).

[11] Note § 4.

[12] Note § 3.

waived their right to a jury trial[13] and agreed the laws of Delaware governed the agreement.[14]

The August 2020 Amendment to Secured Grid Promissory Note increased the loan from $3,000,000.00 to $3,500,000.00[15] and shifted the governing law from Delaware to New York.[16] Then, on July 9, 2024, a Second Amendment to Secured Grid Promissory Note returned the governing law from New York to Delaware and designated the Delaware Superior Court as the forum to resolve any disputes.[17] "[O]ther financing agreements" included in the Loan, original Note, and amended note "remain in full force and effect" and "[t]o the extent any conflict between the terms of this [Second] Amendment and the other financing agreements, the terms of this [Second] Amendment shall control."[18] And, under the second amended note, Investart "hereby waive[d] and agree[d] not to assert against [Art Finance] any defenses to, or setoffs, counterclaims or claims against, the payment and performance of any of [Investart's] debts, liabilities and obligations . . . or against

---

[13] Note § 13.

[14] Note § 5.

[15] Amend. Note § 1.

[16] Amend. Note § 6.

[17] Second Amend. Note § 6.

[18] Second Amend. Note § 4.

3

the enforcement of [Art Finance's] rights and remedies with respect thereto."[19] Peters signed the second amended note on behalf of Investart and in his personal capacity.[20]

By July 2024, the parties agreed that, in the event of a default, Art Finance could declare the unpaid portion of Investart's indebtedness to be immediately due and payable,[21] Investart could not assert defenses or counterclaims against Art Finance,[22] and Delaware law, applied in the Delaware Superior Court, governed disputes under the agreements.[23]

Investart borrowed the full $3,500,000.00 from Art Finance,[24] and in August of 2024, Defendants defaulted on the loan.[25] By letter dated September 10, 2024, Art Finance notified Defendants of the default and demanded "the immediate repayment in full of the loan with the current principal amount of US $3,500,000.00 plus all interest, and fees."[26] Investart did not satisfy the loan, and on November 4, 2024, Art Finance filed a complaint in this Court alleging Investart breached the

---

[19] Second Amend. Note § 9.

[20] Second Amend. Note p. 4.

[21] Loan § 7(b)(i); Note § 4.

[22] Amend. Note § 9; Second Amend. Note § 9; Note § 3.

[23] Second Amend. Note § 6.

[24] Rose Affidavit (Ex. 8 to D.I. 34 ("MSJ")).

[25] D.I. 1, Ex. F ("Demand Letter").

[26] Demand Letter.

Note and Peters breached the Guaranty.[27] Art Finance included copies of the instruments supporting its claims – the loan and the notes – as exhibits to its complaint and demanded Defendants produce an affidavit of defense under 10 *Del. C.* § 3901.[28] On January 7, 2025, Defendants answered the complaint but failed to produce an affidavit of defense.[29] On January 27, 2025, Investart filed an amended answer which included an affidavit of defense.[30] The affidavit of defense does not offer a defense to the loan obligation; rather, Defendants seek to sweep this dispute into another case involving similar – but not identical – parties in New York.

Soon after Defendants' answer, Art Finance moved for "Judgment on the Pleadings and/or Summary Judgment"[31] which the Court denied without prejudice on February 18, 2025 to allow the parties to more thoroughly investigate matters surrounding the loan.[32] On May 9, 2025, Art Finance again moved for summary judgment,[33] and, on July 2, 2025, Defendants moved to stay this case pending the adjudication of what they contend is a related lawsuit in New York.[34] The Court

---

[27] D.I. 1 ("Compl.").

[28] *See* Compl.

[29] D.I. 5.

[30] D.I. 8.

[31] D.I. 6.

[32] D.I. 6; D.I. 29.

[33] MSJ.

[34] D.I. 39.

denied Defendants' request for a stay and deferred ruling on Art Finance's Motion for Summary Judgment to permit the parties to engage in additional discovery.[35]

On December 18, 2025, Art Finance renewed its motion for summary judgment.[36]  Defendants responded in opposition on January 20, 2026,[37] and on January 23, 2026, moved to compel additional discovery,[38] sought leave to file an amended answer and counterclaims,[39] and renewed their motion to stay based on the New York litigation.[40]  The parties fully briefed their respective motions,[41] and the Court heard argument on February 19, 2026.[42]  This order addresses the outstanding motions.

## ANALYSIS

Art Finance seeks to enforce the terms of the loan it extended to Investart. While the Court has afforded the parties the opportunity to explore matters which, at best, lie at the periphery of this agreement, the contours of this transaction remain

---

[35] D.I. 44.

[36] D.I. 50 ("Renewed MSJ").

[37] D.I. 56 ("Def. Answer").

[38] D.I. 58 ("Def. Compel").

[39] D.I. 59 ("Def. Amend.").

[40] D.I. 61 ("Def. Stay").

[41] *See* Renewed MSJ; Def. Answer; D.I. 66; Def. Compel; D.I. 67; Def. Amend.; D.I. 68; Def. Stay; D.I. 69.

[42] D.I. 71.

unchanged. Art Finance loaned Investart $3,500,000.00, Peters guaranteed Investart's obligation, and Defendants defaulted. Defendants do not dispute these facts; rather, they ask the Court to consider matters which are not germane to the enforcement of the debt.[43] The Court must now end this exercise.[44]

## A. DEFENDANTS' MOTIONS

Defendants contend a lawsuit, filed against Art Finance's principal Andrew Rose, *Century Bank v. Art Finance Funding (IX), LLC, Andrew C. Rose, and Ann S. Copeman*, is pertinent to the Court's consideration of this matter.[45] In that case, Century Bank has sued Rose for default on a $20 million loan.[46] Peters, a majority

---

[43] *See* Def. Compel; Def. Amend; Def. Stay.

[44] *See Unbound Partners Limited Partnership v. Invoy Holdings, Inc.,* 251 A.3d 1016, 1025 (Del. Super. Ct. 2021). "The purpose of [Title 10] § 3901's answer-by-affidavit requirement 'is to dispose of legally uncontested matters quickly.'" *Id.* (quoting *Wilmington Tr. Co. v. Thielemann*, 2002 WL 31814046, at *2 n.2 (Del. Super. Ct. Nov. 27, 2002)). Here, the Court permitted Defendants ample time to investigate and present evidence contesting the loan and their alleged default. On the record before the Court, Defendants' breach of the loan and guarantee are uncontested.

[45] Aff. of Peters in Opposition to Plaintiff's Renewed Motion for Summary Judgment ¶ 14.

[46] *Century Bank v. Art Finance Funding (IX), LLC, Andrew C. Rose, and Ann S. Copeman*, 1:24-cv-01027-MLG-JHR.

shareholder in Century Bank,[47] contends Rose asked him to intercede in that case.[48] In Peters' words:

> Mr. Rose's request to assist with his Century Bank loan created a regulatory concern and conflict-of-interest because of my role as the bank's majority shareholder and would have exposed me to liability. As a result, I ceased making interest payments to Mr. Rose in part because I was afraid of potential legal exposure in the event I interceded with Century Bank as Mr. Rose requested.[49]

Peters thus acknowledges the existence of Investart's debt and his guarantee, and concedes default.

### 1. Defendants' Motion to Compel

Defendants ask the Court to order Art Finance to provide documents relating to: (1) "communications  with prospective purchasers of the collateral underlying the loan at issue in this litigation;" and (2) "how Rose distributed monies obtained through a twenty million dollar loan from Century Bank (of which Peters is a majority shareholder)."[50]  Art Finance asserts that discovery has closed and, in any

---

[47] Aff. of Peters in Opposition to Plaintiff's Renewed Motion for Summary Judgment ¶ 13.

[48] Aff. of Peters in Opposition to Plaintiff's Renewed Motion for Summary Judgment ¶ 15.

[49] Aff. of Peters in Opposition to Plaintiff's Renewed Motion for Summary Judgment ¶ 16.

[50] Def. Compel at 1.

event, the information sought by Defendants is not relevant to the issues before the Court.[51]

Art Finance correctly asserts that discovery has closed.[52]  But, more importantly, the requested discovery is not relevant to the present dispute.  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[53]  "Information sought in discovery is considered relevant 'if there is any possibility that the information may be relevant to the subject matter of the action.'"[54]

Art Finance seeks repayment of a $3.5 million loan.  The source of Art Finance's funding is not relevant to Defendant's obligation to adhere to the terms of the loan.[55]  And Art Finance need not inform Defendants of its efforts to sell collateral.[56]  Of course, Art Finance must reveal any diminution of Defendant's debt

---

[51] D.I. 67 ¶¶ 9, 11, 12, 13.

[52] D.I. 45. Discovery closed November 26, 2025.

[53] Super. Ct. Civ. R. 26(b)(1).

[54] *Boatright v. State Farm Insurance Co.*, 2023 WL 8234528, at *2 (Del. Super. Ct. Nov. 28, 2023) (quoting *Burkhart v. Genworth Financial, Inc.*, 2023 WL 1434059, at *1 (Del. Ch. Feb. 1, 2023) (quoting *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 548 (Del. Ch. 2014))).

[55] *See U.S. Bank National Association v. Stevens,* 2025 WL 1139329, *8-10 (Del. Super. Ct. Apr. 17, 2025) (discussing the lack of relevance of the source of loan funds).

[56] Note § 3.

through the sale of collateral and has committed to do so.[57] But, to date, there is no evidence that any of the pledged collateral has been "monetized" to reduce the debt.

The terms of the Note and Loan control.[58] Under the Note, Art Finance is not required to inform Defendants of any action concerning the collateral, nor is it required to sell any collateral.[59] Peters signed the Note in his personal capacity and on behalf of Investart,[60] thereby binding Defendants to its terms. The information now sought by Defendants is not relevant to the matter before the Court. Defendants' Motion to Compel is **DENIED**.

**2. Defendants' Motion for Leave to File an Amended Answer and Counterclaims**

Defendants seek leave to amend their answer and to advance counterclaims for breach of the implied covenant of good faith and fair dealing, violations of UCC § 9-207 for deleterious dealing with the collateral, and for breach of contract for refusing to apply loan payments to interest, and for reputational injury.[61] Art Finance responds that the deadline for amending pleadings has passed and, under the loan

---

[57] Note § 5.

[58] *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *11 (Del. Super. Ct. Aug. 7, 2019).

[59] Note § 3.

[60] *See* Note; *see* Guarantee.

[61] Def. Amend. at 1, 2, 4.

contracts, Defendants waived their right to assert counterclaims thereby rendering any amendments futile.[62]

Again, Art Finance correctly identifies Defendants' tardiness in seeking to amend the complaint; however, the record is clear that Defendants affirmatively relinquished the opportunity to assert defenses or counterclaims.[63]  The terms of the Note and Loan control the parties' conduct.[64]  Under the Note, "[t]he Borrower[s] . . . expressly waive any and every right to impose any counterclaim, setoff or defense in any action or proceeding brought hereunder, except for the defense of payment."[65]  The Amended Note contains a similar provision.[66]

"It is well settled in Delaware that a party may waive [their] rights."[67]  "An explicit waiver occurs 'where it is clear from the language used that the party is intentionally renouncing a right that it is aware of.'"[68]  "Where the parties have

---

[62] D.I. 68 at 3-4.

[63] Amend. Note § 9; Second Amend. Note § 9; Note § 3.

[64] *Brightstar Corp.LLC*, 2019 WL 3714917, at *11.

[65] Note § 5.

[66] Amend. Note § 9.

[67] *Bantum v. New Castle County Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50 (Del. 2011) (citing *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (citing *Pepsi-Cola Bottling Co. v. Pepsico, Inc.,* 297 A.2d 28, 33 (Del. 1972)).

[68] *Friddle v. Moehle*, 2024 WL 493536, at *6 (Del. Ch. Feb. 8, 2024) (quoting *Dirienzo v. Steel Partners Holdings L.P.*, 2009 WL 4652944, at *4 (Del. Ch. Dec. 8, 2009)).

agreed, in writing, to waive [their right to bring counterclaims], 'the Court will give priority to the parties' intentions as reflected in the four corners of the agreement.'"[69]

Peters signed the original Note and the Amended Notes on behalf of himself and Investart.[70] The Court presumes that Peters read the documents before signing, but if he signed the documents without reading them, the Court cannot protect him from the consequences of that action.[71] Defendants waived their right to assert counterclaims rendering their proposed amendments futile. Defendant's motion for Leave to Amend is **DENIED**.

### 3. Defendants' Renewed Motion to Stay this Action Pending Adjudication of a Related Lawsuit in New York

The Court previously denied Defendant's request to stay these proceedings. Nonetheless, Defendants advance similar arguments to stay this case pending the conclusion of a New York case.[72] Defendants contend that this case represents "one isolated piece of a multi-party dispute" occurring in New York and that New York, not Delaware, is the proper forum to resolve issues of collateral damages and

---

[69] *Friddle*, 2024 WL 493536, at *6 (quoting *GMG Cap. Invs., LLC v. Athenian Venture P'rs I, L.P.*, 36 A.3d 776, 779 (Del. 2012)).

[70] *See* Note; *see* Guarantee.

[71] *Pellaton v. Bank of New York,* 592 A.2d 473, 476 (Del. 1991); *Harrington Raceway, Inc. v. Vautrin*, 2001 WL 1456873, at *3 (Del. Super. Ct. Aug. 31, 2001) ("[T]he Court cannot protect business people who decide to sign contracts and promissory notes without reading them.").

[72] Def. Stay

apportionment.[73] Defendant's ask the Court to stay this matter until the New York Action is resolved.[74] Art Finance opposes a stay because, in their view, the New York case does not relate to the current dispute.[75]

Shortly before Art Finance initiated this lawsuit, Art Lending, Inc. sued Rose, in New York.[76] As part of that litigation, third-party plaintiff, AF Funding VIII, LLC sued Investart and Peters for breaches of a secured grid and promissory notes, loan and security agreements, and guaranties in New York state court.[77] Investart and Peters are the only parties in common in both the Delaware and New York Action.[78] While similarly named and comprised of similar representatives, they are separate entities, Art Finance is not a party to the New York Action.[79]

On August 15, 2025, the Court, finding the New York and Delaware actions were separately and capably litigated, denied the Defendants' Motion to Stay.[80] To the extent the cases pending in both jurisdictions involved similar evidence,

[73] Def. Stay at 1-2.

[74] Def. Stay at 1-3.

[75] D.I. 69 ¶ 6.

[76] *Art Lending, Inc. v. Andrew Rose, et al.*, Index No. 653390/2024.

[77] *Art Lending, Inc. v. Andrew Rose, et al.*, Index No. 653390/2024, D.I. 212, ¶ 1.

[78] *See* D.I. 1; *see also Art Lending, Inc. v. Andrew Rose, et al.*, Index No. 653390/2024.

[79] *See* D.I. 1; *see also Art Lending, Inc. v. Andrew Rose, et al.*, Index No. 653390/2024.

[80] Aug. 15, 2025, Hearing Tr., 37:12-21.

discovery in the New York Action was known and readily available for the Delaware litigation.[81]

"Delaware courts, in the interests of comity and judicial economy, normally will stay an after-filed suit in Delaware when a previously filed suit stating similar claims is pending in a court of another state."[82] The decision to grant or deny a stay is within the Court's discretion and will be exercised freely "where there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues."[83]

Here, the Delaware and New York cases do not arise out of a common nucleus of operative fact, and they involve different parties. The parties agreed that any dispute under the loan would be enforced in this Court under Delaware law. There is simply no basis to stay this matter in favor of the New York litigation. Defendant's Motion to Stay is **DENIED**.

## B. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In May 2025, Art Finance moved for summary judgment asserting there is no dispute of fact that Investart contractually borrowed funds from Art Finance, that

---

[81] Aug. 15, 2025, Hearing Tr., 38:10-18.

[82] *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, 1995 WL 1312656, at *3 (Del. Super. Ct. Aug 30, 1995) (citing *McWane Cast Iron Pipe Corp. v. McDowell Wellman Eng'g Co.*, 263 A.3d 281, 283 (Del. 1970); *Prezant v. DeAngelis*, 636 A.2d 915, 918 (Del. Super. Ct. 1994)).

[83] *Id.*

Peters guaranteed the loan, and that Investart breached the contract.[84] Thus, Art Finance contends, there is "no reasonable dispute of fact that Investart owes Art Finance $3.5 million plus interest."[85] Defendants responded that the motion is premature and that discovery will yield documents evidencing material factual disputes.[86] They "intend to produce proof of payment to [Art Finance] for principal and interest owed," and assert that "irrefutable documentary evidence will . . . conclusively demonstrate that Defendants owe less than the alleged $3.5 million plus interest and are not in breach of their contractual obligations."[87] The Court deferred decision on the motion to allow the parties to engage in more fulsome discovery, adjusted discovery deadlines, and permitted Art Finance to refile their motion after the close of discovery.

Art Finance renewed its motion on December 18, 2025, and incorporated its original arguments.[88] In response, Defendants now argue that Art Finance: (i) lacks standing, (ii) breached the implied covenant of good faith and fair dealing, and (iii) is barred from recovery under the equitable doctrine of unclean hands.[89] Art Finance

---

[84] MSJ ¶ 12.

[85] *Id.*

[86] D.I. 38 at 4.

[87] D.I 38 at 6.

[88] Renewed MSJ ¶ 4.

[89] Def. Answer at 1.

replied that, as the holder of the Note, it has standing to enforce the loan contract.[90] And, Art Finance asserts that Defendants claim for breach of the implied covenant of good faith and fair dealing fails because Defendants received the full fruits of the contract.[91] Finally, Art Finance proffers that the doctrine of unclean hands, an equitable remedy, is unavailable here.[92]

## 1. Summary Judgment Standard

Under Superior Court Civil Rule 56, this Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."[93] On a motion for summary judgment, the Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; (iii) denies the motion if a material fact is in dispute."[94] The moving party bears the initial burden of demonstrating that the undisputed facts

---

[90] D.I. 66 ("Renewed MSJ Reply") ¶ 7.

[91] Renewed MSJ Reply ¶ 9.

[92] Renewed MSJ Reply ¶ 11.

[93] Super. Ct. Civ. R. 56(c).

[94] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

16

support claims or defenses.[95]  If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution of the ultimate fact-finder.[96]

### i.  *Art Finance has standing.*

Defendants allege Art Finance lacks standing because another entity, Knickerbocker Funding LLC, funded the loan.[97]  They assert, "it is apparent that Knickerbocker consistently transferred monies to [Art Finance], who in turn promptly remitted them to Investart in satisfaction of the subject loan."[98]  Art Finance does not dispute these facts, but responds that "[t]he ultimate source of the funds that Art Finance lent to the Defendants has no bearing on Art Finance's standing to enforce the note as its holder."[99]

---

[95] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. Super. Ct. 1962)).

[96] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[97] Def. Answer at 3.

[98] *Id.*

[99] Renewed MSJ Reply ¶¶ 7,8.

A plaintiff, of course, must have standing to bring suit.[100] It is axiomatic that the holder of an instrument has standing to enforce the instrument.[101] And, of course, the loan here is a debt instrument,[102] and Art Finance, as holder of the instrument, may enforce the debt. Art Finance has standing to enforce the loan contracts.[103]

### ii. *Art Finance did not breach the implied covenant of good faith and fair dealing.*

Defendants allege Art Finance breached the implied covenant of good faith and fair dealing by preventing Defendants from satisfying their obligations under the loan.[104] Art Finance responds that Defendants fail to offer facts in support of this allegation.[105]

"The implied covenant of good faith and fair dealing inheres in all contracts and exists to fill unanticipated contractual gaps."[106] The principles are invoked "only

---

[100] *Employers Insurance Company of Wausau v. First State Orthopedics*, *P.A.*, 312 A.3d 597, 607-08 (Del. 2024) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))).

[101] 6 Del. C. § 3-301

[102] *See Caspian Select Credit Master Fund Ltd. v. Gohl*, 2015 WL 5718592, at *5 (Del. Ch. Sept. 28, 2015).

[103] *Deutsche Bank National Trust Co. v. Moss*, 2016 WL 355017, at *2 (Del. Super. Ct. Jan. 26, 2016).

[104] Def. Answer at 2.

[105] Renewed MSJ Reply ¶ 9.

[106] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super. Feb. 22, 2021) (citing *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).

when a contract truly is silent on the disputed issue."[107]  "[B]ecause the implied covenant is, by definition, implied, and because it protects the spirit of the agreement rather than the form, it cannot be invoked where the contract itself expressly covers the subject at issue."[108]  "To state a claim for breach of the implied covenant, a claimant must allege: (1) a specific implied contractual obligation, (2) a breach of that obligation, and (3) resulting damage."[109]  A claimant must demonstrate a party engaged in "unreasonable conduct that prevents its counterparty from 'receiving the fruits of the bargain.'"[110]  The fruits of the bargain are the actual benefits of the agreement.[111]

Defendants allege that Art Finance double-pledged collateral, misled prospective purchasers of the collateral, and misallocated loan payments.[112]  These alleged breaches do not arise from any express provisions within the Loan and Note.

---

[107] *Buck*, 2021 WL 673459, at *5 (internal citations omitted).

[108] *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *8 (Del. Ch. Dec. 28, 2018) (quoting *Allen v. El Paso Pipeline GP Co., L.L.C.*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014) (quoting *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008))).

[109] *Buck*, 2021 WL 673459, at *5 (citing *Brightstar Corp. v. PCS Wireless, LLC*, 2019 WL 3714917, at *11 (Del. Super. Ct. Aug. 7, 2019)).

[110] *See Trust Robin, Inc. v. Tissue Analytics, Inc.,* 2022 WL 17423728, at *7 (Del. Ch. Dec. 2, 2022) (quoting *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 888 (Del. Ch. 2009).

[111] *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010).

[112] Def. Answer at 4-5.

Defendants assert they exist within implied contractual obligations. Beyond argument, Defendants fail to offer facts upon which any proffered, undocumented terms may be implied. "It is a rare complaint that pleads a cognizable claim based on the implied covenant."[113] This is not one of those rare cases. Peters alleges that he has proof of repayment for the Loan.[114] The Court twice denied Art Finance's efforts to summarily end this dispute and did so to allow Defendants to offer facts evidencing repayment. Defendants have not done so.

A party who "is not denied the full benefits of its bargain, but rather, is receiving what was bargained for, [ ] cannot now use the implied covenant of good faith and fair dealing to rewrite a contract that it believes to be a 'bad deal.'"[115] Investart contracted with Art Finance to borrow $3.5 million and received the full benefit of that bargain – $3.5 million. There is no evidence of a breach of the implied covenant of good faith and fair dealing.

### iii. The defense of unclean hands does not apply.

Defendants allege that Rose's attempt to obtain Peters assistance with Rose's Century Bank loan prohibits Art Finance's recovery under the doctrine of unclean

---

[113] Trust Robin at *7.

[114] Aff. of Peters in Opposition of Motion for Summary Judgment ¶ 15.

[115] *Westlake Pipe & Fittings Corporation v. Geon Performance Solutions, LLC*., 2024 WL 3386136, at *4 (Del. Super. Ct. July 12, 2024).

hands.[116]   Defendants assert that Peters "determined that issuing payment to any Rose Entity would be inappropriate because, *inter alia*, he was concerned that Rose would divert payments from him to paying off the Century Bank loan."[117]   Art Finance responds that the doctrine of unclean hands, an equitable remedy, is inapplicable here, where nothing more than money damages are sought.[118]

Unclean hands is an equitable defense that "applies the maxim of equity that '[h]e who comes into equity must come with clean hands.'"[119]   "The question raised by a plea of unclean hands is whether the plaintiff's conduct is so offensive to the integrity of the court that his claims should be denied, regardless of their merit."[120] "[A]t bottom, the unclean hands doctrine is a 'rule of public policy.'"[121]   Because the doctrine of unclean hands is a rule of public policy, it is generally unavailable where legal remedies are sought.[122]   The doctrine "does not operate as a free-floating, bad

[116] Def. Answer at 5.

[117] Def. Answer at 6.

[118] Renewed MSJ Reply ¶ 11.

[119] *American Healthcare Administrative Services, Inc. v. Aizen*, 285 A.3d 461, 484 (Del. Ch. 2022) (quoting 1 John Norton Pomeroy, *Equity Jurisprudence* § 397 at 737 (4th ed. 1918)).

[120] *Aizen*, 285 A.3d at 484 (quoting *Gallagher v. Holcomb & Salter*, 1991 WL 158969, at *4 (Del. Ch. Aug. 16, 1991).

[121] *Aizen*, 285 A.3d at 491 (quoting *Morente v. Morente*, 2000 WL 264329, at *3 (Del. Ch. Feb. 29, 2000) (citations omitted); *Korotki v. Hiller & Arban, LLC,* 2017 WL 2303522, at *11 (Del. Super. Ct. May 23, 2017).

[122] *See Korotki v. Hiller & Arban, LLC*, 2017 WL 2303522, at *11 n 78 (Del. Super. Ct. May 23, 2017) (citing cases limiting the doctrine of unclean hands to equitable

person defense based on conduct wholly unconnected to the facts of the case."[123]

And, in any event, the doctrine does not survive in the absence of logical proof.[124]

Defendants' factual offering here does "not cohere into any rationally explicable economic scenario involving inequitable or illegal conduct by the Lender."[125]

Art Finance is seeking money damages—the amount in default on the loan.[126] Contract claims for money damages sound in law, not equity.[127] And, to the extent there are limited exceptions to that rule, no exception applies here.[128] Moreover, Defendants assertion of the doctrine of unclean hands is unconnected to the facts of this case. Investart borrowed $3.5 million from Art Finance, and Peters guaranteed the loan. Defendants have failed to establish how Rose's Century Bank loan precluded the repayment of the Art Finance loan.

---

claims); *see also Manufacturers and Trade Trust Co., Wilmington Savings Fund Soc., FSB v. Washington House Partners, LLC*, 2012 WL 1416003, at *4 (Del. Super. Ct. Mar. 22, 2012) (permitting the Superior Court to consider the unclean hands defense in limited circumstances).

[123] *Aizen*, 285 A.3d 461 at 484.

[124] *See Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 746 (Del. Ch. 2004).

[125] *Id.* (cleaned up).

[126] D.I. 1.

[127] *Testa v. Nixon Uniform Service, Inc.*, 2008 WL 4958861, at *3 (Del. Ch. Nov. 21, 2008) (money damages is a legal claim, not an equitable one.).

[128] Equitable relief may be invoked where funds are held by a third party (such as an escrow agent) or where the transfer of property is involved. *Agahi v. Kelly*, 2024 WL 1134048, at *5-6 (Del. Super. Ct. Mar. 15, 2024).

### iv.    *Summary Judgment is granted.*

In the end, this case ends where it began.  Art Finance loaned a sum to Investart, and Peters guaranteed the loan.  Defendants do not dispute the loan.  Investart's nonpayment constituted a default of the loan which Peters, as guarantor, failed to cure.  Again, Defendants do not dispute the default.  Rather, Defendants offer a series of arguments unrelated to the matter before the Court.  To the extent evidence might exist to create a material factual dispute, the Court afforded Defendants time to engage in discovery.  No evidence has been offered to refute the terms of the loan or Defendants' breach.  No evidence has been offered revealing a material dispute of fact.  Art Finance's Motion for Summary Judgment is **GRANTED.**

The parties shall, by June 30, 2026, prepare and submit a form of final order of judgment consistent with this decision.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge

23